# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRUCE T. RATLIFF,

        Plaintiff,

v.                                 Case No. 20-CV-1823

LITISHA RAMUS,

        Defendant.

## DECISION AND ORDER

Plaintiff Bruce T. Ratliff, who is representing himself and confined at Kettle Moraine Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Ratliff was allowed to proceed on a claim against Advanced Practice Nurse Practitioner Latisha Ramus for withholding Ratliff's prescription for gabapentin.

The parties have filed cross-motions for summary judgment. (ECF Nos. 25, 35.) This order resolves their motions. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 18.)

## PRELIMINARY MATTERS

In her reply brief Ramus asserts that Ratliff did not follow Federal Rule of Civil Procedure 56 or Civil Local Rule 56 when responding to her motion for summary judgment. (ECF No. 50 at 1-2.) Specifically, she states that Ratliff did not properly respond to several of her proposed findings of fact, and thus the court should consider them admitted for purposes of summary judgment. (*Id.*) Ratliff then subsequently filed

a sur-reply without seeking leave from the court to do so. (ECF No. 51.) Additionally, he filed an amended response to Ramus's proposed findings of fact. (ECF No. 53.)

District courts are entitled to treat *pro se* submissions leniently, *see Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Regarding the sur-reply and amended responses, whether to grant a party leave to file a sur-reply brief is a question within the court's discretion. "The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Merax-Camacho v. U.S.*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3 626, 631 n. 2 (7th Cir. 2010)). "In some instances, allowing a filing of a surreply 'vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision.'" *Univ. Healthsystem Consortium v. United Health Group, Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (quoting *In re Sulfuric Acid Antitrust Litg.,* 231 F.R.D. 320, 329 (N.D. Ill. 2005)). The court will accept Ratliff's sur-reply because it clarifies his position but does not appear to add new arguments or otherwise prejudice Ramus. The court will consider the materials in the sur-reply and amended responses to the proposed findings of fact where appropriate.

Regarding Ratliff's failure to follow Fed. R. Civ. P. 56 and Civil L.R. 56, while his proposed findings of fact and responses to Ramus's proposed findings of fact do not formally conform with the rules, when combined with his declaration (ECF No. 49) his materials contain sufficient facts to allow the court to rule on the cross-motions for summary judgment.

2

Case 2:20-cv-01823-WED   Filed 12/28/22   Page 2 of 12   Document 58

# FACTS

The facts are largely undisputed. On January 24, 2020, Ratliff was booked into the Racine County Jail on two parole holds for violating the terms of his extended supervision for two prior convictions. (ECF No. 37, ¶ 1; ECF No. 43, ¶ 2; ECF No. 47 at 10.) He was also booked on new charges. (*Id.*) Prior to his detention, Ratliff had been diagnosed with restless leg syndrome, and his neurologist, non-defendant Dr. William Blake, had prescribed him 600 mg of gabapentin to treat the symptoms, including tremors. (ECF No. 37, ¶ 3; ECF No. 43, ¶ 6.)

The same day he was booked into the Racine County Jail Ratliff completed a urine drug screen that showed he had cocaine in his system. (ECF No. 37, ¶ 4.) He also filled out a "chemical withdrawal questionnaire" that showed he used 0.5 grams of heroin on a daily basis, with his last dose taken the day before, on January 23, 2020. (*Id.*, ¶ 5.) Additionally, he reported using marijuana once a month for several years and 1 gram of cocaine every few months for "a few" years. (*Id.*, ¶¶ 6-7.)

As a result of the urine screen and withdrawal questionnaire, Ramus decided to withhold Ratliff's gabapentin. (ECF No. 37, ¶ 13.) Ramus states that she made this decision based on her professional experience and because, when incarcerated individuals test positive for opiates, "[i]t is a widely accepted practice within a correctional medical setting to withhold gabapentin" because it "is a drug with a potential for diversion and abuse in prisons and jails." (*Id.*, ¶¶ 11-12.) Ratliff asserts that Ramus withheld his gabapentin because she had a "wrongful bias and preconceived notion that inmates or anyone detained in a jail or prison setting should

3

not be allowed to have the medication gabapentin." (ECF No. 47 at 2.) Ratliff does not provide any evidence indicating how he knows about Ramus's bias.

On February 18, 2020, Ratliff's girlfriend dropped off his gabapentin at the jail pursuant to the jail's medication drop off policy. (ECF No. 43, ¶ 3.) That same day, Ratliff filed a request for his gabapentin. (ECF No. 37, ¶ 14.) On February 19, 2020, Ratliff received a memo from the medical unit stating that his gabapentin was being denied because he tested positive for cocaine during the intake process. (ECF No. 43, ¶ 4.) On February 23, 2020, Ratliff filled out a "jail medical slip" responding to the February 19 memo, and in the medical slip he informed medical staff that his neurologist, Dr. Blake, has been prescribing him gabapentin for years to control his tremor sensations from his restless leg syndrome. (*Id.*, ¶ 6.) Additionally, Ratliff gave the medical staff Dr. Blake's contact information. (*Id.*, ¶ 7.)

On March 18, 2020, to treat the symptoms of his restless leg syndrome, Ramus prescribed Ratliff 20 mgs of propranolol. (ECF No. 37, ¶ 15.) On April 2, 2020, Ratliff filed a request for medical attention because "the substitute medication (propranolol) was not providing relief for his tremors and sensations." (*Id.*, ¶ 16.) Ratliff received another memo in response to his request for medical attention stating he would not be allowed his gabapentin. (ECF No. 43, ¶ 8.)

On May 11, 2020, Ramus examined Ratliff and explained to him in person that he was not allowed gabapentin because he tested positive for cocaine and because gabapentin was "a high-risk medication in a correctional setting." (ECF No. 37, ¶ 18.) During the exam Ratliff explained in detail the symptoms he was experiencing,

4

describing the sensations as "an electrical current buzzing sensation feeling through [his] body 24/7." (ECF No. 43, ¶ 9.) He told Ramus that gabapentin is the only medicine that works. (*Id.*) In response, Ramus prescribed Ratliff ropinirole twice daily in addition to the propranolol. (*Id.*, ¶¶ 18-20.)

While Ratliff asserts that he met with Ramus "on several occasions" and consistently begged for his gabapentin, the undisputed record shows that the next time Ratliff spoke with Ramus about his restless leg syndrome was on October 8, 2020. (ECF No. 37, ¶ 22.) This exam was set in response to a request for medical attention Ratliff filed on September 26, 2020 (ECF No. 47-1 at 36.) There does not appear to be any evidence in the record that Ratliff sought medical attention between May 11, 2020, and September 26, 2020. After the October 8 exam Ramus increased the dosage for both Ratliff's propranolol and ropinirole. (ECF No. 37, ¶ 22.)

On December 8, 2020, Ratliff wrote a request for mental health medical attention, stating that he was feeling "very depressed" and "having constant anxiety attacks as well as tremors" because he was not on gabapentin. (ECF No. 43, ¶ 18; ECF No. 47-1 at 38.) Ratliff also feared he was becoming suicidal. (*Id.*) In response, Ramus evaluated Ratliff on December 18, 2020, and "documented that Ratliff had been cooperative with trialing propranolol and ropinirole but had not appreciated the full benefit from these medications." (ECF No. 37, ¶ 24.) Ramus also noted that, because Ratliff had not tested positive for any illicit substances, she was reinstating his gabapentin. (*Id.*, ¶¶ 24-25.) Ratliff began receiving gabapentin on December 20, 2020. (*Id.*, ¶ 26.)

5

Ratliff states the only reason Ramus reinstated his gabapentin is because he filed this suit on December 10, 2020, and that he served the suit on her on December 18, 2020—the same day she reinstated his gabapentin. (ECF No. 47 at 5.) Ratliff does not include any proof of service or other evidence that indicates that Ramus knew of this lawsuit at the time she reinstated his gabapentin.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his

6

pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Ratliff claims that Ramus violated his constitutional rights when she initially withheld his gabapentin and when she continued to refuse to give him gabapentin for 11 months. Because Ratliff was in custody in violation of a probation hold during the relevant time period, the court must first determine whether the Eighth Amendment or Fourteenth Amendment governs his claim. The Eighth Amendment governs claims of convicted prisoners whereas the Fourteenth Amendment's due process clause governs claims of pretrial detainees. *See Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). The Seventh Circuit Court of Appeals has yet to clarify whether an individual detained on a probation hold should be treated as a convicted prisoner or a pretrial detainee. *See The Estate of Jeffery Nottestad v. LaCross Cty*, Case No. 21-cv-535, 2022 WL 17583798 at * 5 (W.D. Wis. Dec. 12, 2022) (citing *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017); *Palmer v. Marion Cty.*, 327 F.3d 588, 592-93 (7th Cir. 2003)). However, in *Smith v. Sangamon Cty Sheriff's Dept.*, 715 F.3d 188, 191 (7th Cir. 2013), the Seventh Circuit treated a plaintiff on a parole hold as a pretrial detainee even though it did not directly address which standard applied. As such, the court will apply the Fourteenth Amendment standard here.

7

To sustain a claim under the Fourteenth Amendment's due process clause a plaintiff must show that (1) "he suffered from an objectively serious medical condition" and (2) "the staff's response to it was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 942-943 (7th Cir. 2019). Assessing objective unreasonableness "requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief—whether the response was reasonable." *McCann. Ogle Cty. Ill.,* 909 F.3d 881, 866 (7th Cir. 2018).

Regarding a decision to prescribe pain medication and decisions related to pain management, the Seventh Circuit has emphasized that "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). In other words, "[c]ourts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances." *Cambronero v. Meli*, Case No. 20-cv-1635, 2022 WL 1504928 at *2 (E.D. Wis. May 5, 2022) (citing *Pyles v. Fahim,* 771 F.3d 403, 408 (7th Cir. 2014)).

Ramus initially decided to withhold Ratliff's gabapentin because he had cocaine in his system. She made this decision in her professional judgment as an advanced nurse practitioner who can prescribe medicine. Ratliff does not present any evidence demonstrating that Ramus's decision "departs radically from 'accepted professional practice.'" *Zaya v. Sood*, 836 F.3d 800 (7th Cir. 2016.) He posits that she made the

8

decision because she has a bias against drug users in a jail setting, but this is pure speculation on his part. While a non-movant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Additionally, the undisputed facts show that Ramus based her decision in part on security concerns--introducing a drug prone to abuse in the jail setting. Where an official's conduct is "rationally related to a legitimate non-punitive governmental purpose" and the actions are not "excessive in relation to that purpose," they are objectively reasonable. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019.)

Ratliff emphasizes that he had been prescribed gabapentin by a specialist prior to his incarceration. While refusing to provide a prisoner with medication prescribed by a specialist may amount to a constitutional violation, s*ee Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001), there needs to be evidence that the refusal was objectively unreasonable. Considering the safety concerns with introducing gabapentin into the jail population, it was reasonable for Ramus to first treat Ratliff's restless leg syndrome with medications that posed less of a security threat. *See Myrick v. Gohde*, Case No. 17-cv-603, 2020 WL 5074411 at * 22 (W.D. Wis. August 27, 2020) (finding that a doctor was reasonable to take security concerns into consideration when deciding to discontinue a plaintiff's gabapentin prescription).

It was also objectively reasonable for Ramus to continue to try alternative medications until she became aware that Ratliff's health was significantly

9

deteriorating. She first prescribed Ratliff propranolol, and when he notified her at his examination that it was not working, she added ropinirole. After she added ropinirole, nothing in the record shows that Ratliff complained or sought medical attention for his restless leg syndrome for a period of approximately 4 months, from May 2020 to the end of September 2020. When Ratliff sought medical care on September 26, 2020, Ramus increased the dosage of both medications.

Then in December 2020 Ratliff wrote a health slip in which he described his deteriorating mental health as a result of his restless leg syndrome, which, based on the undisputed record, is the first time Ramus was informed that Ratliff's condition was worsening. In response she reinstated his gabapentin, noting that the security risks had lessened.

Ratliff presents no evidence indicating that Ramus's actions were objectively unreasonable. He speculates that she gave him gabapentin only when she was served with this lawsuit, but according to the record she was not served by the United States Marshal Service until December 17, 2021—one year after Ramus reinstated the gabapentin. (*See* ECF No. 15.) Ratliff presents no evidence demonstrating that Ramus knew of this lawsuit prior to that date.

Because there is nothing in the record demonstrating that a question of material fact exists as to whether Ramus's actions were objectively unreasonable, summary judgment is granted in her favor. At most Ratliff is disagreeing with Ramus's approach to his pain management, which is not enough to establish a constitutional violation. *See Pyles*, 771 F.3d at 409 ("Disagreement between a prisoner

10

and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient by itself" to establish a constitutional violation).

## CONCLUSION

For the foregoing reasons, Ramus's motion for summary judgment is granted, and Ratliff's motion for summary judgment is denied. Ramus also argued she was entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the qualified immunity argument. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Ramus's motion for summary judgment (ECF No. 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that Ratliff's motion for summary judgment (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 28th day of December, 2022.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge